**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JIMMY EARL DAVIS,**

 **Plaintiff,**

**vs.**            **CASE NO. 4:06CV186-MP/AK**

**CANDY HIGHTOWER, et al,**

 **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 (doc. 37) against Defendants Hightower, Gibson, Chancy, Reams, and C. Smith,[1] who have filed a special report, (doc. 82), which has been construed as a motion for summary judgment. (Doc. 81). Defendants Markham and McCrainie, who were originally John Doe defendants, but were identified and served later, have also filed a special report (doc. 102), which has been construed as a motion for summary judgment (doc. 103). After months of discovery, Plaintiff has responded. (Docs. 128, 129 and 130). As discussed below, it is respectfully recommended that Defendants' Motions for Summary Judgment (docs. 82 and 104) be **GRANTED**, and Plaintiff's amended complaint (doc. 37) be

---

[1] Service was attempted on Richard Harvey, but was returned un-executed with no forwarding address for service. (Doc. 93). Plaintiff was advised of this fact (doc. 100), but did not advise what additional efforts should be made through discovery or otherwise to have this defendant served.

**DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(22).

I.      **Allegations of the Second Amended Complaint (doc. 37)**

Plaintiff claims that on February 13, 2006, Defendant Smith took 9 "religious healing stones" from his property without cause. Smith allegedly gave the stones to Defendant Chancy, Property Sergeant, who approved the confiscation. Plaintiff uses the stones in Wiccan rituals to help heal his peptic ulcer disease, as well as other conditions. He alleges that the largest stone is 2" by 3/4" and the remaining stones are no larger than 1" in diameter. He has had the stones since 1997 when he was in Jackson CI. Plaintiff claims that the stones are mandated by his religion and their arbitrary confiscation substantially burdened the practice of his religion and caused stress and depression.

Plaintiff then alleges that the "end-result" of his honest efforts to exercise his religious rights was an assault by Defendants Reams and Hightower on July 12, 2006, with Defendants Markham and McCrainie watching, and although he had sought protection from Defendant Gibson prior to the attack, Gibson took no action to protect him. He claims he was struck in the head first by Reams, then again by Hightower, and fell several times from the head blows causing injury to his back.

Attached to the complaint are his grievances, which will not be recited here since exhaustion is not an issue.

Plaintiff has also attached the following DRs:

**No. 4:06cv186-MP/AK**

4/14/06-Disrespect to Official concerning statement to CO Murray with regard to not working.

5/01/06-Refusing to work

5/31/06-Spoken threats concerning statement "I'll cut your throat" made to Hightower

## II. Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242,

**No. 4:06cv186-MP/AK**

251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

**III.    Defendants' Rule 56(e) evidence**

    a)    Inmate Population Detail (doc. 79, exhibit A)

Plaintiff has been incarcerated since 1991, he is sentenced to life, and is under close management.

    b)    Disciplinary Actions (exhibit B)


**No. 4:06cv186-MP/AK**

Since September 1997, Plaintiff has had 14 DR's, several of them for threats, possession of weapons, narcotics, other contraband, and disrespect, lying, disobeying orders, refusing to work, self-mutilation, and extortion.

    c)    <u>Affidavit of Sherri Chancy (exhibit C)</u>

Defendant Chancy relates that Defendant Smith told her about the stones in Plaintiff's property. Chancy talked with the chaplain, referred to the approved property list, and found that the stones were not on the list and in her opinion posed a security risk because one of them was pointed and could be used as a weapon. The chaplain called central office to confirm that the stones were not approved and the decision was made to remove them from his cell.

    d)    <u>Affidavit of Candy Hightower (exhibit C-1)</u>

Hightower denies striking Plaintiff on July 12, 2006, or at any time. She attached a copy of her duty roster on that date and attests that she was a control room officer and could not leave her post at any time during that shift on July 12, 2006. She recalls an incident prior to July 12, 2006, when she counseled Plaintiff about his uniform and he threatened to cut her throat, but she did not have contact with him at all on July 12, 2006.

    e)    <u>Affidavit of Robert Reams (exhibit C-2)</u>

Reams denies engaging in any act of retaliation against Plaintiff. [page 2 of his affidavit is missing].

    f)    <u>Affidavit of Cheryl Smith exhibit C-3)</u>

**No. 4:06cv186-MP/AK**

Smith was inventorying Plaintiff's cell when she found the stones and brought them to Sergeant Chancy because one of the stones was pointed in appearance. She left the stones with Chancy and had no further involvement with them. She does not make decisions about property, and she made no derogatory remarks about the stones nor did she inhibit his religious practice in removing the stones, her only concern was security.

      g)      <u>Affidavit of Buddy Gibson (exhibit C-4)</u>

Gibson attests that Plaintiff reported to him on April 12, 2006, that his stones had been taken and that Smith and Chancy had made remarks about his religion. On June 2, 2006, Gibson was told by Plaintiff that a sergeant had threatened his life. Procedure is that upon such a report Gibson prepares a Management Information Notification which is sent to the Office of the Inspector General and Gibson awaits instructions from OIG as to whether an investigation should be undertaken. Gibson has no authority to decide whether or not to investigate. OIG instructed him not to investigate, that the matter would be handled by the institution.

On August 1, 2006, Gibson was assigned to investigate Plaintiff's complaint of an assault occurring on July 12, 2006, by Reams and Hightower. Plaintiff was interviewed, but there were no witnesses or other evidence to corroborate his allegation and no injuries identified during a medical examination, so the investigation was closed.

      d)      <u>Report of Close Management dated 6/9/2006 (exhibit D)</u>

**No. 4:06cv186-MP/AK**

Plaintiff was referred to close management because of his "inability to live in the general inmate population without disrupting the operation of the institution." The decision was based on several DR's (see above exhibit B).

e)   <u>Health Information Arrival Summary dated 7/12/06 (exhibit E)</u>

Upon his arrival at Santa Rosa from Taylor, Plaintiff reported no problems except a history of back pain from an injury years ago, tendinitis in his arm, and he requested a low bunk pass and arch supports. He reported an assault at Taylor, but denied any injuries from it and no injuries were noted.

f)   <u>Affidavit of James Upchurch (exhibit F)</u>

Upchurch is Chief of the Bureau of Security Operations and identifies the security concerns with the stones as these: Inmates must be restricted in the accumulation of non-essential property because searches are frequent and necessary and cannot be conducted efficiently when a lot of property is involved. Contraband is not as easily seen when there is a lot of property. Inmates cannot merely claim that property has religious significance, the property must in fact be approved as such. It creates tension and resentment if certain inmates are allowed favorite items which are not approved. The box where the stones were kept could be used to hide razors and other dangerous items and one of the stones in particular was sharp.

Upchurch attached a picture of the box and the stones and one is pointed. He attests that Wiccan inmates are allowed "the Book of Shadows" and a medallion as part of their religious practice.

h)   <u>Affidavit of Alex Taylor (exhibit H)</u>

**No. 4:06cv186-MP/AK**

Taylor is the Chaplaincy Services Administrator and attests that all religions are respected as are their practices, but if anything is deemed a security risk it may be restricted such as the stones Plaintiff had in his possession. As a Wiccan, Plaintiff may possess the Book of Shadows and a medallion and may engage in a wide variety of religious correspondence and worship without hindrance.

i)  Affidavit of William Markham (doc. 102, exhibit B)

Markham notes that Plaintiff has not identified him specifically as one of the John Doe escorting officers on the date the alleged assault occurred. He has worked as an escorting officer, but does not recall escorting Plaintiff on the date in question. He denies seeing or assisting in an assault on the Plaintiff and would attempt to stop anyone who was assaulting an inmate. He never relieved Officer Reams to allow for an assault nor did he ever get Officer Hightower from the control room to allow her to engage in an assault.

j)  Affidavit of Glen McCrainie (doc. 102, exhibit C)

McCrainie denies all the allegations against him as well and does not recall escorting Plaintiff on July 12, 2006.

**IV.  Plaintiff's evidence (docs. 128, 129, 130)**

a)  Inmate Sick-Call Request dated 7/13/06 (exhibit A)

Plaintiff states:

Upon my arrival in E-dorm while I was in my cell the officer again went through my property and I found the 3-day supply of Amoxicillan given to me at Medical twenty minutes before my arrival in E-dorm was missing. I have spoken to Staff, but can get no favorable response. I need my analgesic balm renewed fro my tendinitis in my (R) elbow. I need my

**No. 4:06cv186-MP/AK**

salsolate for my lower back pain renewed. And I need my arch support pass and supports renewed and replaced.
When did problems/symptoms start? about a week ago with the infection. The tendinitis has been ongoing for months. My back pain has been ongoing for years and same with my fallen arches.

b)    <u>Inmate Sick-Call Request dated 7/23/06 (exhibit B)</u>

Plaintiff states:

I am experiencing severe pain in my lower back and (R) hip. The ringing and a constant pain in (R) ear has increased. The lower-back pain is the result of an injury while on active military duty, but has been aggravated by the impact with the concrete on my (R) hip while temporarily unconscious.
The [indecipherable] began on 7/12/2006 after being assaulted at Taylor CI.

c)    <u>Inmate Sick-Call Requests from 7/27/06 to 8/11/08 (exhibits C-O)</u>

Plaintiff requests tests and medication for his continued back pain which he attributes to the assault on 7/12/06 at Taylor CI.

d)    <u>Grievances (exhibits P through R)</u>

These are not relevant to the claims presently before the Court.

e)    <u>Informal Grievance dated 3/9/06 (exhibit S)</u>

Plaintiff's grievance about the stones and the response thereto explains that the stones are not on the approved list of property for Wiccans and per Chapter 33-602.201(f) inmates must seek approval of "other religious property" which is determined on a case by case basis and these stones and the box Plaintiff made to put them in were deemed a security risk and denied for that reason.

f)    <u>Inmate Property List dated 5/3/99 (exhibit V)</u>

**No. 4:06cv186-MP/AK**

A property list prepared at Liberty CI shows that 9 stones were returned to Plaintiff by an officer on 5/3/99.

g)      Memorandum from Religion Department dated 9/11/01 (exhibit W)

This memorandum was prepared by Chaplain Jones at Santa Rosa CI and states that he would be allowed to keep the 9 stones because he had them in his possession when he was transferred to Santa Rosa. His request for 3 healing stones or crystals was denied because they were not among the allowable items for the Wiccan faith.

h)      Memorandum from Chaplaincy Dept. dated 8/22/03 (exhibit X)

Memorandum indicates that Plaintiff could keep his nine stones and a book, but the medicine bag and its contents would be confiscated.

i)      Inmate Property Lists dated 1/6/03 and 3/19/03 (exhibits Y and Z)

Nine healing stones were allowed Plaintiff at Liberty CI.

j)      Memo from Chaplaincy Services dated 2/20/05 (exhibit A-1)

Plaintiff's request to keep a cardboard box to hold his previously approved nine healing stones as part of his Wiccan religion was approved at Wakulla CI.

k)      Property Lists (exhibits B-1 through F-1)

Lists show that at Wakulla CI from 2/05 to 1/24/06 he was allowed his nine religious stones, but when he transferred to Taylor, the stones were marked "to be mailed" on 2/13/06.

l)      Investigative Report dated 10/23/06 (exhibits I-1 through L-1)

The alleged assault by Reams and Hightower was investigated by Defendant Gibson, who interviewed a number of witnesses, including the officers escorting Plaintiff

**No. 4:06cv186-MP/AK**

at that time and an inmate identified as an eye-witness, none of whom recalled any incident on July 12, 2006, involving Plaintiff. The case was closed based on lack of corroborating witnesses and lack of injuries noted by medical staff.

    m)    <u>Affidavits of Justin Mack and Jeffrey L. Miller (exhibits V-2 through D-3)</u>

The papers submitted are unsigned and/or blank. It appears that Plaintiff mailed the proposed affidavits to these inmates at their free-world addresses, but the papers were returned or refused. Their evidentiary value is nil.

**V.    Analysis**

    a)    <u>Freedom of Religion</u>

While prisoners retain First Amendment rights, including the First Amendment right of free exercise of religion, regulations or policies "alleged to infringe constitutional rights [in prison] are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 340, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987). The Supreme Court in <u>O'Lone</u> directs courts to give respect and deference to the judgment of prison administrators even in First Amendment challenges raised within the confines of prison. *Id.* The standard of review requires that challenged prison regulations be upheld if they are "reasonably related to legitimate penological interests." <u>O'Lone</u>, 482 U.S. at 350, *utilizing the standard of* <u>Turner v. Safley</u>, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

**No. 4:06cv186-MP/AK**

Thus, to find a free exercise violation in the prison context, a plaintiff must demonstrate that prison officials have employed a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which burdens a practice of his religion or prevents him from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and significantly interfere with Plaintiff's practice of his religious beliefs. *Cf.* Thornburgh v. Abbott, 490 U.S. 401, 418, 109 S. Ct. 1874, 1884, 104 L. Ed. 2d 459 (1989) (noting that O'Lone found prison regulations valid in part because the prisoners were permitted to participate in other Muslim religious ceremonies).

Prior to considering the reasonableness of a regulation, as set forth in Turner, the court must first determine whether an infringement has occurred, *i.e.* whether one has been substantially burdened in practicing his religion. Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir. 1995). "Substantial burden" has been defined as one that either compels the person to engage in conduct that his religion forbids or forbids him from engaging in conduct that his religion requires. *Id.* at 1522. This burden must be more than inconsequential. Levitan v. Ashcroft, 281 F.3d 1313 (D.C. Cir.2002). The religious practice allegedly burdened must be "some central tenet of a [person's] individual beliefs, Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir. 1995), or an "essential" or "fundamental" practice. Abdur-Rahman v. Michigan Dept. Of Corrections, 65 F.3d 489, 491-92 (6th Cir. 1995).

**No. 4:06cv186-MP/AK**

Only if Plaintiff demonstrates a substantial burden on his practice, is it necessary to apply the reasonableness test of Turner to determine if the DOC's actions were reasonably related to a legitimate penological interest. Wilson v. Moore, 270 F. Supp. 2d 1328,1349 (N.D. Fla. 2003). If Plaintiff fails to provide evidence that a particular practice is essential to his faith that its absence would be a substantial burden to the exercise of his religion, then he has failed to show that its denial violated the First Amendment and summary judgment should be granted in Defendant's favor. *Id.* at 1350.

The evidence submitted by Plaintiff establishes that he is a proclaimed Wiccan, and that he was previously allowed nine stones and a box he made to keep them in while he was in Liberty CI, Wakulla CI, and Santa Rosa CI. When he was transferred to Taylor CI, the items were taken from him and determined to be a security risk.

As an initial and important matter, Plaintiff has not offered any evidence to show that these stones were a "central tenet," essential or fundamental practice of his religion. Absent such a showing, there is no need to address the reasonableness of the regulations or actions taken pursuant to the regulations by these defendants. There has been no burden upon his religion and no first amendment implications. In other words, the defendants could take these stones for any reason or no reason whatsoever. Plaintiff has no constitutional right to these stones, they have no significance beyond any other piece of property he may possess, and his claim for their return is, at most, a state court issue of conversion of property.

**No. 4:06cv186-MP/AK**

Additionally, whether other institutions found these stones to be a risk or not, the security officer at Taylor CI did, and the Court finds the explanation offered by Chief of Security Operations James Upchurch entirely reasonable and plausible. One of the stones was pointed and could easily inflict injury if used as a weapon. The other stones appear benign, but could conceivably be constructed in a manner to inflict some injury. The box, with its blowsy lining, could easily conceal razors or drugs or some small item of contraband and would require close and careful scrutiny to determine what lay within its folds. Searches are necessary, frequent, and need to be conducted with as little difficulty as possible to help maintain the security of the prison setting, and these items, being "non-essential" to Plaintiff's religion, were unnecessary obstructions to that process.

Federal court does not sit as some super authority over the daily decisions made by prison staff, but defers to them in matters of daily operations and security. That is not to say that when constitutional issues are raised, the Court does not examine those decisions, but when a plausible security concern is expressed, as it has been here, the Court will not undermine it.

There is no merit to this claim.

b)   <u>Excessive Force</u>

Under the Eighth Amendment, force is deemed legitimate in a prison setting as long as it is used "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986), quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2nd Cir. 1973). A variety of

**No. 4:06cv186-MP/AK**

factors are considered in determining whether the force was applied maliciously or sadistically, including the need for force, the relationship between that need and the amount of force used, the threat reasonably perceived by the prison officials applying it, and any efforts made to temper the severity of the force used. Hudson v. McMillian, 503 U.S. 1, 7-8 (1992). A *de minimis* use of force, as evidenced by no injury, is one of the factors for consideration and cannot support a claim of excessive use of force. Hudson, at 7.

> The Court finds persuasive the following definition of *de minimis*:
>
> A claim by a prisoner of an injury in prison he received in an unprovoked assault or excessive use of force by the guards or a failure to protect from other inmates should utilize the same approach to the nature of the injury and whether it actually falls under the new statute with regard to being a physical injury as to how people in a free world setting in exercising their day-to-day medical care would treat such injuries. Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate de minimis standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?
>
> ***
>
> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care.

Luong v. Hatt, 979 F. Supp. 481, 486 (N. D. Texas 1997). While the Eleventh Circuit has not adopted this precise definition, it has been applied by the United States District

**No. 4:06cv186-MP/AK**

Court for the Middle District of Florida, Watkins v. Trinity Service Group, 2006 WL 3408176, and by district courts in Alabama and Georgia, which are included in the Eleventh Circuit. See Daughtry v. Moore, 2009 WL 1151858 (S.D. Ala.); Johnson v. Moody, 2006 WL 898135 (S.D. Ala); Talley v. Johnson, 2008 WL 2223259 (M.D. Ga.); Johnson v. Bainbridge Public Safety, 2007 WL 2593969 (M.D. Ga.); Radford v. Johnson, 2006 WL 2927578 (M.D. Ga). This definition and the Luong case has been cited positively by both the Third and Sixth Circuits as well. See Perez v. United States, 2009 WL 1426765 (3rd Cir.) and Jarriett v. Wilson, 162 Fed. Appx. 394 (6th Cir. 2005).

During the medical intake summary upon his arrival at Santa Rosa **on the day of the assault in a completely different institution where the fear of reprisal should have been minimal,** Plaintiff's primary complaints were about tendinitis, back pain from an old injury, and an infection. (Doc. 79, Exhibit E). Although he mentioned the assault, he made no complaints about his head, despite his allegations that he was struck so hard in the back of the head that he fell to the concrete twice. The day after the alleged assault he submitted a sick-call request and did not even mention the assault. (See Doc. 130, Exhibit A).

An investigation into the incident was closed because no one, not even Plaintiff's witnesses, corroborated his story about the assault and again because no injuries were noted.

Consequently, even if force was used, which everyone but Plaintiff denies, by definition it was not excessive, and therefore, Plaintiff has failed to state a claim for excessive use of force in violation of the Eighth Amendment.

**No. 4:06cv186-MP/AK**

### c) <u>Failure to Protect</u>

To show a violation of an inmate's Eighth Amendment right to be protected, a Plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. <u>Hale v. Tallapoosa County,</u> 50 F.3d 1579, 1582 (11th Cir. 1995). Each element must be proven. <u>Purcell ex rel Estate of Morgan v. Toombs County</u>, 400 F.3d 1313 (11th Cir. 2005); <u>Hale</u>, *supra* at 1582; <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1537 (11 Cir. 1993). The mere knowledge of a dangerous condition does not establish deliberate indifference, the plaintiff must demonstrate that with knowledge of the dangers, the defendants knowingly or reckless declined to take actions that would have improved the conditions. <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1537 (11 Cir. 1993). When liability is predicated on an officer who witnessed an excessive use of force and did not intervene, the non-intervening officer must be in a position to intervene and failed to take reasonable steps to protect the victim. <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1331 (11th Cir. 2008) (no evidence presented that officer could have anticipated the use of force by his partner in time to prevent the blow, one punch in the stomach, to the victim). <u>See also Skrtich v. Thornton</u>, 280 F.3d 1295, 1302 (11th Cir. 2002).

Plaintiff has not even established that McCrainie or Markham were present at the alleged assault. Neither officer can recall escorting Plaintiff on July 12, 2006. (<u>See</u> Affidavits of Defendants, doc. 79, exhibits I and J and their responses to Plaintiff's Request for Admissions, doc. 130, Exhibit Q-2). In fact, it appears from reviewing the investigative report that Defendant Markham was clearly not involved in escorting

**No. 4:06cv186-MP/AK**

Plaintiff on that date, it was another officer. (See Doc. 130, Exhibit J-1). Plaintiff had this report information for months, yet he has persisted in bringing these claims against Markham. Such persistence in the face of facts to the contrary, does not lend credence to Plaintiff's other uncorroborated facts with regard to his assault claim.

Nonetheless, having found that no excessive force was used, whoever witnessed whatever occurred on July 12, 2006, cannot be deemed, on a constitutional level, to have failed to protect Plaintiff from it.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motions for Summary Judgment (docs. 82 and 104) be **GRANTED**, and Plaintiff's amended complaint (doc. 37) be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Gainesville, Florida, this **13th** day of July, 2009.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**No. 4:06cv186-MP/AK**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 4:06cv186-MP/AK**